SOUTHERN PACIFIC COMPANY v. JOHN LEASH.

. No. 83.

**1. Known Risk—Contributory Negligence a Question for Jury.**
A fireman of a piledriver engine, while shovelling coal into the engine from a connected box car in which the coal was kept, was injured by being jolted off the flat car upon which was the piledriver engine, by the striking of a moving train against it. The piledriver engine was near one end of the flat car, and was usually enclosed by a house with a sliding door at the end next to the coal car, in which the fireman might stand while shovelling coal, and protect himself from falling when jolted by grasping that end of the house. When the accident occurred that end of the house was entirely open. Plaintiff had been in the employ of the defendant company as pile engine fireman for a year or more. He alleged that defendant had promised to replace the end of the house within a very short time, as had always been the custom before when it had been removed, and that relying upon said promise and custom, he continued to remain in plaintiff's employ, discharging his said duties, being induced to do so by said conduct, words, and action of defendant. The theory of the plaintiff was, that the master having so promised, and the injury having occurred within a reasonable time for the performance of the promise, and the defect not being of such a dangerous character as that a prudent man would not have continued in the service, in view of the promise, that defendant was liable. The effect of the allegation with respect to promise would be to relieve plaintiff from the negligence contributing to the injury, by remaining in the service when the danger was apparent, and the question of his negligence was one for the jury.

**2. Negligence of Fellow Servant.**—It can not be said that the jolt was an intervening or independent cause contributing to the injury, and that the defendant would not be liable because it was the negligence of a fellow servant, for it was against such contingencies that the end of the house would reasonably be inferred to be a protection.

**3. Promise to Repair.**—Plaintiff knew of the defect, and the additional risk, and unless he is protected by a promise, express or implied, to remedy the defect by replacing the end of the house, he can not recover. Prior to June 3 the end of the house was taken out. The plaintiff went to work as fireman on June 5; the injury occurred Friday, the 7th. The evidence showed no promise to replace the end of the house on any named day; the inference from it being that the foreman would fix it as soon as he got through the work he was then at. The custom of the defendant's employes was to replace the end of the house on Sunday. The plaintiff testified that he thought they would put it up on Sunday. It

is therefore clear that he was not induced to remain in the service by any promise, either express or implied, to replace the end of the house, and therefore he can not recover.

APPEAL from Galveston.   Tried below before Hon. WM. H. STEWART.

*Waul & Walker,* for appellant.— 1.   When it is shown by the petition that the injury complained of was caused by the negligence of the coemployes of the same employer, or that the negligence charged was not the proximate cause of the injury, the employe can not recover.   Railway v. Garcia, 75 Texas, 583; Railway v. Leslie, 57 Texas, 83; Pease v. Railway, 20 N. W. Rep., 908; Lewis v. Railway, 18 Am. and Eng. Ry. Cases, 263; Henry v. Railway, 76 Mo., 288.

2.   The verdict of the jury was found contrary to and against the evidence, the testimony showing that the danger was open, manifest, and well known to plaintiff, who was an intelligent man of much experience in that particular work; that it was only necessary to work at the fire on the piledriver car when it was at work, and the construction train was not moving; that the train was moving at the time of the accident, and it was gross negligence for the plaintiff to be at work at that time on the piledriver car; that no promise was made to plaintiff of such character as would relieve him from the risk caused by removing and not replacing the end of the piledriver car.   Railway v. Garcia, 75 Texas, 583; Railway v. Blohn, 73 Texas, 637; Robinson v Railway, 46 Texas, 540; Brown v. Brown, 71 Texas, 355; Rogers v. Railway, 76 Texas, 502; Railway v. Bradford, 66 Texas, 732; Railway v. Drew, 59 Texas, 10; Railway v. Watson, 14 N. E. Rep., 721; Railway v. Clark, 15 Am. and Eng. Ry. Cases, 261; District of Columbia v. McElligott, 117 U. S., 621; Tuttle v. Railway, 122 U. S., 189.

3.   The court erred in refusing the charge asked by defendant:   "If the jury believe from the evidence that the jolt caused by moving or stoppage of the cars caused the injury to the plaintiff, and the train was under charge of the conductor, and if caused by his negligence, the plaintiff can not recover."   Railway v. Smith, 76 Texas, 611; Railway v. Blohn, 73 Texas, 637; Railway v. Mitchell, 72 Texas, 609; Brown v. Brown, 71 Texas, 355.

*H. F. Ring* and *F. M. Spencer,* for appellee.— 1.   The court did not err in refusing to sustain the exceptions to plaintiff's petition.   Railway v. Lehmberg, 75 Texas, 66; Railway v. Cummings, 16 Otto, 700; Fisk v. Railway, 13 Pac. Rep., 146.

2.   The court did not err in overruling appellant's motion for a new trial, because the evidence was sufficient to sustain the finding of the jury on the following material points, viz.:

First. That the defective condition of the appliance had been called to the attention of the defendant previous to the accident, and that an authorized agent of defendant had promised the plaintiff to have the defect remedied, and that the accident occurred within a reasonable time after such promise was made.

Second. That the defect complained of was the proximate cause of the accident, and that it was not of such an obviously dangerous character as to render plaintiff guilty of contributory negligence in continuing in the service a reasonable time longer after the promise was made; and that no negligence on the part of plaintiff contributed to the accident.

Promise to repair: Railway v. Drew, 59 Texas, 12; Railway v. Donnelly, 70 Texas, 371; Hough v. Railway, 100 U. S., 214; Patterson v. Railway, 76 Pa. St., 389; Manfg. Co. v. Morrison, 40 Ohio St., 148; Reed v. Railway, 15 Am. and Eng. Ry. Cases, 216; Pomroy v. Iron Works, 62 Mo., 35; Whittaker's Smith on Neg., 136; Wood's Mast. and Serv., sec. 360; 2 Thomp. on Neg., 1009; Sherm. & Redf. on Neg., 126; 3 Wood's Ry. Law, note 1484; Beach on Neg., 373.

As to authority of foreman to make promise: Railway v. Williams, 75 Texas, 4; Railway v. Smith, 76 Texas, 616; Douglas v. Railway, 63 Texas, 564.

GARRETT, CHIEF JUSTICE.—Plaintiff brought this suit against the Southern Pacific Company, to recover damages for personal injuries received by him while in the employ of the company as fireman of a piledriver engine, without fault or negligence on his part.

Defendant demurred to the petition, and also pleaded a general denial and contributory negligence. The demurrer was overruled, and trial by jury resulted in a verdict for the plaintiff. The overruling of the demurrer has been assigned as error.

Substantially stated, as far as necessary, the petition alleges, that at the time of the injury plaintiff was in the employ of defendant as a fireman of a stationary engine on a piledriver car, then and there being operated by defendant in the city of Houston; that said stationary engine was situated near one end of said car, and while plaintiff was engaged in shovelling coal into the said engine, one of the defendant's employes in charge of one of the locomotive engines then being operated by the defendant, caused said engine and certain cars attached to it to violently jolt and jar said piledriver car, without warning to plaintiff, whereby he was thrown from said car, between the same and another car immediately behind it, and one of his legs was run over by said car and he was injured.

That said stationary engine was located very near the end of the car, it being intended that the same should be enclosed in a small house, for the protection in part of defendant's employes, including the fireman,

whose duty it was to shovel coal into the furnace of said engine; that some two or three weeks before said accident happened, said engine had been removed temporarily from said car, in order that the same might be more conveniently used in the removal of a wreck, and in order to take the engine off from said car the rear end of the house enclosing the engine, being the portion next to the end of the car, had been taken out, it having been constructed in such a manner as to be easily taken out and replaced by means of bolts, without injury to the structure of the same; that previous to said accident, plaintiff had been in the employ of defendant as a fireman in connection with said stationary engine on said piledriver car, for a year or more, and that on a number of occasions during said period said engine had been taken off temporarily from said car and placed on the ground, such removal having been made by taking out the rear end of the house as aforesaid; that on all said occasions when the engine had been returned to said car, the plank forming the rear end of said house, in connection with the narrow sliding doors, also forming a part of the same, had been replaced; that about four days before the occurrence of the accident complained of, the engine was returned to its place on the car, but defendant negligently failed and neglected to replace the end of said house, and negligently permitted said piledriver car to be used without the same being replaced.

Said house having no end to it, and there being no projection whatsoever on the sides of the same to which a person could catch hold in case of a jar or jolt, plaintiff was thereby exposed to great and unnecessary danger in passing around said engine and in shovelling coal into the same; that when said jolt and jar occurred, as before alleged, plaintiff did in fact throw his hands against the side of said house, and had there been a projection there, even to the extent of a few inches, which he could have caught hold of, or had the plank constituting the end of said house been replaced as promptly as it had been the custom of defendant theretofore to do, the accident would not have occurred. Plaintiff also averred that defendant had promised to replace said plank forming the end of said house within a very short time, and by its action induced plaintiff to believe that the same would be replaced within a very short time; and that relying on such promise, and on the custom and habit of defendant to replace the end of said house as aforesaid as soon as the engine was returned to the same, plaintiff continued to remain in defendant's employ, and discharge the duties of a fireman in and about said engine, being induced thus to continue the same by reason of the conduct, words, and actions of the defendant as aforesaid. He also charged that defendant and its employes were guilty of negligence toward him and others whose duties required them to work about said engine, in failing at once to restore the end of said house to its proper place; and that

the accident to him complained of resulted from such negligence on their part, and without fault or negligence on the part of plaintiff.

As stated in the brief of counsel for the appellee, the suit was brought upon the theory that the master had promised to repair the defect caused by leaving out the end of the house, and the injury having occurred within a reasonable time for the performance of such promise, and the defect not being of such a dangerous character that a prudent man would not have continued in the service, in view of the promise, for such reasonable time, the defendant company assumed the risk of the defect, thereby making itself liable to the plaintiff for the consequences of the accident.

Without committing ourselves to the position thus broadly taken by counsel for the appellee, we think the facts alleged in the petition bring the case within the exception to the general rule, that the employe can not recover for injuries received from the use of defective implements or machinery of which he had notice, as recognized in Railway v. Drew, 59 Texas, 12. Plaintiff alleged that the accident would not have occurred but for the fact that the end of the house had not been replaced, and that defendant had promised to replace it within a very short time, and by its action induced plaintiff to believe that it would be replaced as promised; and that relying on the promises of defendant, and the custom and habit of defendant to replace the end, plaintiff continued to remain in its employ and the discharge of his duties. It also appeared from the petition that the engine had been returned to the car only about four days.

It would appear from the petition that the defendant was negligent in failing to replace the end of the house that had been removed. The effect of the allegation with respect to the promise of the defendant to replace it within a short time would be to relieve plaintiff from negligence contributing to the injury by remaining in the service when the defect was obvious and the danger apparent, and he was entitled to have it go to the jury with other evidence for the purpose of determining whether or not, under the facts, he was guilty of contributory negligence. In Hough v. Railway, 100 United States, 224, the court said: "If under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery upon the ground of contributory negligence." So it would seem that proof of a promise to replace the end of the engine house would be admissible as evidence to show that the plaintiff was in the exercise of due care, and that. the question should be submitted to a jury. Railway v. Brentford, 79 Texas, 625; Railway v. Williams, 82 Texas, 342.

It can not be said that the jolt or jar was an intervening or independent cause contributing to the injury, and that the defendant would not be liable because it was the negligence of the fellow servant of the plaintiff,

for it was against such contingencies that the end of the house would be reasonably inferred to be a protection.

Appellant's eighth assignment of error is as follows: "That the court erred in overruling the defendant's motion for new trial, the verdict of the jury being contrary to and against the charge of the court; the verdict of the jury being contrary to law. The verdict of the jury was found contrary to and against the evidence, the testimony showing that the danger was open, manifest, and well known to plaintiff, who was an intelligent man of much experience in that particular work. That it was only necessary to work at the fire on the piledriver car when it was at work, and the construction train was not moving. That the train was moving at the time of the accident, and it was gross negligence for the plaintiff to be at work at the time on the piledriver car. That no promise was made to plaintiff of such character as would relieve him from the risk caused by removing and not replacing the end of the piledriver car."

We think that it conclusively appeared from the evidence that whatever defect or danger there was in the operation of the piledriver and the engine with the end out, was equally as open and obvious to the plaintiff as it was to the defendant. The evidence showed that the piledriver and the engine by which it was operated were placed upon a flat car; the piledriver being at one end and the engine at the other end of the car. Around the engine was erected a house large enough to enclose the engine, which had an upright boiler; three sides were fixed fast to the car, but the side or end of the house next to the end of the car was composed of four pieces of planks bolted in position, so that they might be unbolted and the end taken out for the purpose of removing the engine from the car when it became convenient to do so. When in position, the end of the house was so arranged that the middle planks slided to each side and formed a door or opening through which one might pass into the house and around the engine. Just next to this end of the piledriver car was a box car used as a tender for coal, tools, etc. It was the duty of plaintiff as fireman of the engine to shovel coal from the box car into the furnace of the engine. The house came within five inches of the end of the flat car on which it was situated, and in shovelling in coal plaintiff would stand sometimes with one foot on this part of the car and the other in the box car; but when the end of the house was in position it was shown that he could stand in the door so as to brace himself and keep from falling, and that in case of a jolt or jar he would have something to catch hold of. When the end of the house was not in place there was no way to brace himself, nor was there anything to catch hold of, if he should be about to fall from the jolting of the cars.

It was perfectly obvious that an attempt to shovel coal into the engine while the train was in motion, with the end of the house out, would be attended with danger. When the accident occurred the piledriver car

had been taken into Houston for dinner, and the conductor of the train and the other employes were setting timber in position so as to go to work; the train was switching at the time. Plaintiff testified, that at the time he was shovelling the coal into the engine the train was not in motion, and that the jolt occurred just as he had finished and thrown the shovel into the box car; but all of the other eye-witnesses state that the train was in motion. Whether the train was in motion or not, there was no danger or defect about the condition of the engine house that the plaintiff was not fully aware of, and unless he is protected in remaining in the employ of the defendant by a promise, express or implied, to remedy the defect by replacing the end of the house, he can not recover. And it is doubtful if our Supreme Court would recognize the exception at all, unless the employe, having continued in this employment on the strength of the promise, should be ignorant at the time of the accident of the fact that the employer had failed to comply with his promises.

But we do not think there was shown by the evidence any promise, either express or implied, or anything arising out of notice to the defendant's foreman, such as would have induced the plaintiff to remain in the service.

The want of authority in the foreman to make the promise does not seem to be raised by the assignment of error, but it was sufficiently shown that he was in charge of the force operating the piledriver, with authority to hire and discharge, which must mean of course to hire and discharge the men under him.

It was shown that sometime prior to June 3, the ends of the house had been taken out and the engine taken off the car for use elsewhere; that it was replaced on June 3, but the planks forming the ends of the house were not put in position again. Plaintiff did not work on that day, nor did he go to work until Wednesday noon, and the accident occurred on Friday, June 7.

Plaintiff was questioned with reference to the promise, and answered as follows:

Q. What did you say or do about the ends of the house? .

A. I told him Wednesday, "How about this back part of the house?" He said he would like to get through. This was about 6 o'clock Wednesday. He was just getting up on the box car, smoking a cigar. I called his attention to it, as it was there to protect me. He said he would like to get through. I told him again the next day, Thursday, at noon. He was standing in the car then, and I said, "Are you going to have this fixed up?" and he said he would like to get through there. That was on Thursday, the 6th, right at noon.

Q. Did he say he would put it up when he got through?

A. Yes, sir. (Defendant objected to question as leading.)

Q. What did he state about putting it up?

A. He said he would like to get through.    The next day was Friday, and I thought they would put it up on Sunday, so they would not lose two or three hours during working days.  They put it up before on Sunday, the 17th of March.    Told them about that house about three years ago.    When they were taking it down I asked them about it, and they said they would put it back right away.

In explaining how he got hurt, and after describing the injury, he said: " They took me into the car and I said, ' You see what you have done ?  Why didn't they put up the back part of the house as I asked them to do ?'    While I was lying there bleeding I said to them, ' Why didn't you put up the end as I asked you ?' "

Q.  Who was that ?

A.  A foreman, Freeland.    He said, " Do you suppose we were going to accommodate you ?"    That was while I was lying on my bunk bleeding.

Q.  Did you run this risk, you say, as you thought they were going to put this up on Sunday ?

A.  They had always put it up on Sunday; they said they were going to fix it up.

He further stated that they always put the end in on Sunday before. The only promise that can be at all inferred from this evidence is, that the foreman said that he would put the end in when he got through with the work that they were then at; and it nowhere appears that the plaintiff ever relied on this indefinite promise, for he says he thought they would put it up on Sunday, as they were in the habit of putting it up then; and it is clear that the plaintiff was not induced to remain in the service by any promise, either express or implied, to replace the end of the house.    This was all the evidence as to a promise; the foreman denied having had any such conversation with plaintiff.

It is unnecessary to notice the remaining assignments of error.    They relate to the giving and refusing of charges.    The charge of the court, taken as a whole, with the instructions given at the request of the defendant, was a fair presentation of the case.

Because the verdict of the jury was contrary to the evidence in the respect pointed out, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 26, 1893,