## Plowman Construction Company v. Garrison's Administrator.

(Decided February 17, 1914.)

### Appeal from Warren Circuit Court.

1. Master and Servant—Master's Liability for Injuries to Servant—Risks Assumed by Servant—Promise to Remedy Defect—Time Specified in Promise.—A promise by the master to remedy the defect will not justify the servant in continuing in the employment on the faith of the promise, where the place is so obviously dangerous that a person of reasonable prudence and ordinary in-

telligence would understand and appreciate the peril arising from the defective condition; but, whether under the circumstances here shown a person of reasonable prudence would have continued to work therein was a question for the jury.

2. Master and Servant—Promise to Remedy Defects—Time Specified.—And, where complaint is made by the engineer operating a hoisting engine that such engine is so insecurely anchored as to make it unsafe; and promise is made to "fix it in a day or two— maybe tomorrow" and the injury occurred "two or three days" thereafter the time specified in the promise is not sufficiently definite to charge the servant with the assumption of the risk because of the extra day.

W. B. GAINES, J. W. FRAZIER, JR. for appellant.

GUY H. HERDMAN, W. R. GARDNER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Burley Garrison, on June 29, 1912, while in the service of appellant company, and engaged in the operation of a hoisting engine, was injured; and by next friend, instituted an action against appellant to recover damages therefor. Upon a trial of the action, the jury returned a verdict in plaintiff's favor in the sum of two thousand seven hundred and seventy-five dollars and defendant's motion for a new trial having been overruled, it appeals. The trial was had March 4, 1913. On April 21, 1913, Burley Garrison died; and by consent, the action was revived in the name of his administrator.

Appellee's decedent, at the time of the injury, was nineteen years of age. He was working for appellant, a construction company engaged in the construction of a Federal building in the city of Bowling Green. His particular duty was the operation of a hoisting engine which was used in the raising and lowering of elevator cages in said building. This hoisting engine had one drum, around which a wire cable was passed several times, one end of the cable being attached to one of two elevator cages, and the other end of the cable to the other cage, in such manner that when the engine was operated so as to revolve the drum in one direction, one cage would descend while the other was ascending; when the engine was reversed and the drum operated in the reverse direction, the cage which had gone up would descend, and that one which had descended, would ascend.

This hoisting engine was mounted upon timbers placed on the ground. Wooden "stobs" had been driven

into the ground and attached to these timbers, for the purpose of anchoring the engine and preventing its vibration and being drawn out of position when engaged in elevating loaded cages up into the building; but these "stobs" had failed to serve their purpose.

The engine was equipped with a brake which was controlled by the foot of the operator. This brake was a bar of iron about three feet long, upon the end of which a ring or loop was turned, for the operator's foot to rest on; which ring or loop was parallel with the ground, and had been worn smooth by long use.

The engine was equipped with a throttle valve, which was placed in such position as to make it necessary for the operator to stoop over the drum in order to reach said valve.

Appellee's decedent testified that at the time he was injured, he was standing with one foot on the ground and the other on the brake; that he was holding the throttle valve with one hand and the reverse lever with the other, which necessitated a stooping position; that he was engaged in running the engine for the purpose of elevating a cage which was heavily loaded; and that because of the insecure manner in which the engine was anchored, the speed at which he was compelled to operate the engine, thus heavily loaded, caused it to vibrate in such manner as to cause his foot to slip off of the defective brake upon which he was standing, and, by reason of the stooping position in which he was compelled to work in order to operate the throttle valve, he lost his balance and was thrown over on to the drum and thereby injured, permanently destroying the use of his right arm and at the time of the trial he was still suffering from an injury to his breast and in fact never recover from the injury.

It was shown by the evidence that the place where decedent was required to work could have been made safe, or at least safer, (1) by placing the throttle valve in such position as to obviate the necessity for the operator to lean over the drum, thus avoiding the increased danger of being thrown off balance, which naturally results from a stooping position; (2) by equipping the brake with a foot-plate having a rough surface, making less probable the slipping of the operator's foot while engaged in operating the engine, especially in a stooping position; and (3) by anchoring the engine in such manner as to prevent vibration and consequent shaking of the

operator while engaged in the operation of the engine in the position described by the decedent. It was also shown that decedent had complained of the insecure anchoring of the engine permitting vibration thereof when engaged in elevating heavy loads, and that appellant's superintendent in charge of the work, promised to remedy it "in a day or two." This was two or three days before the injury was received.

1. Appellant first insists that the injury could not have occurred in the manner testified to by appellee's decedent; and that it was entitled to a peremptory instruction upon that ground. But we are of the opinion that there was abundant evidence to take the case to the jury under appellee's testimony and theory of the manner and cause of the injury; and to sustain the verdict of the jury.

2. Appellant introduced as a witness its superintendent of the work, who testified that he had on several ocasions ordered decedent not to operate the hoisting engine at a high rate of speed. This was admitted by decedent; but, as has been seen, he testified that he was compelled to operate the engine at high speed because of the weight of the load on the cage which he was engaged in elevating. This was a matter which, under the instructions as given, addressed itself to the jury.

3. As to the promise to repair, decedent testified that this was made two or three days before the injury; and that the superintendent told him that he would make the repairs "in a day or two, maybe tomorrow." Appellant contends, therefore, that as decedent admittedly knew of the danger, he had no right to rely upon this promise. Appellant cites the case of American Tobacco Co. v. Adams, 137 Ky., 414, 125 S. W., 1067, in which this court said: "If the promise is made to repair or remedy a condition or situation that is so obviously dangerous that a person of reasonable prudence and ordinary intelligence would understand and appreciate the peril, arising from the defective condition, then the servant will not be justified in continuing in the employment on the faith of the assurance or promise, and the master will not be liable if he does."

But, whether the condition was so obviously dangerous that a person of reasonable prudence would not continue to work therein was for the jury, and was properly submitted to them in the last clause of instruction No.

**1,** which is as follows: "But the jury is further instructed that if they believe from the evidence that the dangerous and unsafe condition of said place and appliances, if they were unsafe, was so apparent that an ordinarily prudent person in the interest of his own safety, would not have continued to work there, they will find for the defendant."

4. As to the time when the repairs were to be made. The last complaint was made two or three days before the injury was received by decedent, who testified that appellant's superintendent told him, "All right, go ahead; we will fix it in a day or two, maybe tomorrow."

It was said in the case above cited that "if the promise or assurance is that the repair will be made by a specified time, the servant may continue to work on the faith of it until the time specified; and if no time be fixed, when the repairs are to be made, then the servant has the right to assume that they will be made in a reasonable time." But a recovery will not be denied appellee because decedent worked "two or three days" under a promise to repair "in a day or two, maybe tomorrow;" considering the term "in a day or two" in the way it is ordinarily used and accepted, it was not sufficiently definite under the circumstances, as to charge decedent with the assumption of the risk by reason of his continuing to work on the third day after the promise was made.

5. The fourth instruction is as follows: "The court instructs the jury that if they believe from the evidence that the unsafe condition of the engine and appliances was caused by plaintiff's own negligence in running and operating said engine; and shall further believe that plaintiff did not complain of same, or if he did complain that defendant did not promise to repair, and plaintiff continued to work with said engine and was injured, they will find for the defendant."

Appellant argues that this instruction assumes an unsafe condition, and that the court erred in giving it in this form . Appellant had asked the court to instruct the jury as follows:

"If the jury believe from the evidence that if at the time of the accident, the plaintiff was operating the engine so that it ran faster than it properly should have run, and further believe that the plaintiff was instructed not to so run it, then in so running it, the plaintiff as-

sumed the risk, and the jury must find for the defendant."

This instruction so offered by defendant, in effect assumes the place was made unsafe and the injury caused by reason of the fact that defendant was running the engine too fast. The instruction complained of was given in lieu of the one offered by defendant, based on that phase of the defense, though in an extended form, and the instruction offered by appellant, having in effect assumed the place to be unsafe, it is in no position to complain of this trivial omission; and, as the other instructions required the jury to believe the place unsafe before they could find for the plaintiff, we do not think the instruction in the form given, was prejudicial to appellant.

6. The petition alleged that the plaintiff had expended for medical attention the sum of $275. It was filed on August 6, 1912. Decedent on the trial was asked: "Q. What has been your doctor's bill—what medical attention have you incurred?" "A. Dr. Grubbs' bill is $309; and I don't know what Dr. Huddle's is."

There was other testimony showing that part of the medical attention was had after the filing of the petition. Appellant complains of this testimony for the reason that it includes expense of medical treatment incurred after the filing of the original petition. Appellee was entitled to recover all expense for medical attention incurred up to the time of the trial, though the proper practice would have been to have filed a supplemental petition upon which to base the testimony concerning expenditures for medical treatment after the filing of the original petition; but the record discloses no objection by appellant to this testimony.

However, the instructions restricted the jury to a finding of $275 for expense of medical attention. The petition prayed for damages in the sum of $3,000; and the verdict was for $2,775; so it is apparent that the finding was $2,500 for plaintiff's suffering and permanent injury, and $275 for expense of medical treatment, the whole being within the amount prayed for; and we do not think the substantial rights of appellants have been prejudiced in this respect.

Judgment affirmed.