## Stonega Coke & Coal Company v. Bush.

(Decided September 25, 1917.)

### Appeal from Harlan Circuit Court.

Master and Servant—Knowledge—Assumed Risk.—Where a servant, employed in operating a machine, is injured because of its

defective condition, and who, for three months before the injurious accident, knew of the defective condition of the machine, and had taken it to the shop for repairs, and had continued to operate the machine, knowing it had not been repaired, and without assurance from the master of its safety, is held, as a matter of law, to have known of the defective condition of the machine causing his injury and to have assumed obvious risks incident to its operation.

SAMPSON & SAMPSON for appellant.

ROSE & HUFF for appellee.

## Opinion of the Court by Judge Clarke—Reversing.

Appellee, Will Bush, who was the plaintiff below, brought this action against the Stonega Coke & Coal Company to recover damages for injuries sustained by him, when, on October 3, 1914, the rear jack, which held the machine he was operating in place, fell and struck him on the head. He alleged in his petition that the jack was caused to fall because of the defective condition of the machine furnished to him by the defendant, which condition was known to the defendant, but was not known to him and was not obvious. Defendant, in addition to a traverse of the petition, relied upon assumed risk and contributory negligence on the part of the plaintiff, in defense of the action. The trial resulted in a verdict and judgment for the plaintiff for $500.00, from which judgment this appeal is prosecuted.

The facts, as testified to by plaintiff and corroborated by his brother, are, in substance, as follows: Plaintiff had been working for defendant as a machine operator and had operated this particular machine, or one like it, for about three years, during the last three months of which time the machine, as stated by plaintiff, was out of repair "in every way in the world; every speck of it was out of repair"; that one of the channel irons was bent, which gave the cutter head play and caused it to quiver and jump; that the set screws were worn out that held the bits on the gauge, until they would not hold the bits; that he gauged the bits four times on the night of the accident and they would not hold; that it was necessary to gauge the bits to make them all of the same length; that when one of the bits was longer than the others it caused the machine to jump and quiver; that the stud bolts were loose and old, and would not hold the chain guide solid, and that this caused the machine

to jump; and that the cutter head plates were worn out, as a result of which the machine would jump and quiver and was hard to hold.

Plaintiff, asked if there was anything else the matter with the machine, answered: "The fact about it is, there wasn't any bolts in the machine that would hold. I would tighten them up and in an hour they would all be loose again, they'd jump loose from the machine, from the jumping of the machine, the whole machine jumped." Plaintiff further said that, in the three months the machine had been out of repair, he had taken it to the shop to get it fixed about twenty-five or thirty times; that they had patched it up a little, but that the condition of the machine remained the same during the whole three months; that, if the machine had been in good condition, it would not have jumped and quivered and shaken, as this one did; that the jack had frequently dropped out before, but it did not kick around like it did at the time it hit him; that the last time he took it back to the shop for repairs was three or four nights before the accident; that, when he went back to the machine office to get it and saw that it had not been repaired, he told the machine boss that they had not fixed the machine, and the boss told him that they had worked a little on it, to take it back and try it, and, if it would not do, to bring it back the next morning; that, at the time he got hurt, nine of the forty-two bits were out of the machine, because the lugs were broken off and would not hold them; that a night or two before the accident, in atempting to make the set screws tight enough to hold the bits in place, three of the set screws had twisted off. Asked, whether or not he expected they would finally fix the machine and believed what they said about fixing it up, plaintiff said: "Of course, I was expecting them to fix it, or I would not have took it that often."

The rear jack, which injured plaintiff in falling, was of iron and extended from a socket on the machine, at an angle, to a hole cut in the roof of the mine about six feet back of the rear of the machine, and its purpose was to hold the machine steady while it was cutting coal. At the time plaintiff was hurt, he was returning from having oiled the cutter head to his seat at the rear of the motor box and was within two, two and one-half, or three feet of the left rear corner of the motor box upon which the rear jack rested.

Plaintiff, by his testimony, makes it clear that he knew, as well, or better than, anyone else, the condition of the machine he was operating, that it was out of repair, that when being operated the whole machine would quiver, shake, and jump, to such an extent that the rear jack had frequently fallen; and this was exactly what happened and caused his injury.

Under the state of facts disclosed, it seems to us unescapable that plaintiff was thoroughly aware of the danger and of the possibility of just such an accident as happened to him; and that, in continuing in the service with the machine in this condition for a period of three months, he assumed the risk incident thereto. He does not claim that he was given any assurance as to his safety in using the machine, but testified only that he had been told it would be repaired and that he expected they would finally fix the machine or he would not have taken it back for repairs so many times. He testified that, when he went to oil the machine and was starting back with the oil can, the machine was quivering and jumping as it always had for three months. He not only knew of the defective condition of the machine, but also knew that its defective condition caused it to shake, quiver and jump, to such an extent that the rear jack was liable to fall from its fastening, and it is unthinkable that a man of ordinary prudence, especially one of plaintiff's experience, did not realize the obvious and imminent danger of just such an accident as befell him, and, having continued the work with the machine in this condition for a period of three months, certainly more than a reasonable time for repair, he assumed the risk, and the trial court should have sustained defendant's motion for a peremptory instruction. K. & I. Bridge & R. R. Co. v. Melvin, 31 R. 959; Kentucky Freestone Co. v. McGee, 118 Ky. 306; C., N. O. & T. P. Ry. Co. v. Goldston, 156 Ky. 410; Concannon v. Strassel Paint & Roofing Co., 167 Ky. 141; Pullman Co. v. Geller, 128 Ky. 72; White on Personal Injuries in Mines, sec. 182, p. 192.

The other questions raised are not considered.

For the reasons indicated, the judgment is reversed and cause remanded for further proceedings consistent herewith.