## KEYS v. PENNSYLVANIA R. CO.
### No. 371.

Circuit Court of Appeals, Second Circuit.
June 12, 1939.

Burlingham, Veeder, Clark & Hupper, of New York City, (Ray Rood Allen and C. B. M. O'Kelley, both of New York City, of counsel), for appellant.

Gazan & Caldwell, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This action was brought to recover, under the provisions of the Federal Employer's Liability Act, 45 U.S.C.A. § 51, et seq., the damages for the benefit of his widow which were sustained when Harry A. Keys, a section foreman in the employ of the defendant, died while trying to put out a brush fire near a shelter station called Bluemont, Md., on the main line of the defendant's railroad from York, Pa., to Baltimore, Md. Trial was by jury. There was a verdict for the plaintiff on which judgment was entered and the defendant has appealed.

The plaintiff's intestate was nearly sixty-four years old; had been in the employ of the defendant for about forty-six years; and had become somewhat impaired in health although he was apparently fit to perform his duties as section foreman up to the time he died.

On May 10, 1937, he was working with his men burning over the right of way of the defendant about three quarters of a mile west of Bluemont station and some two hundred yards west of a switch where there were tracks leading northerly from the main line to a quarry. About five hundred feet northerly of the main line tracks and about three quarters of a mile easterly of the quarry, there was a farm

house belonging to a man named Cumming with some out-buildings near it. About half past eleven that morning an engine backed seven or eight freight cars over the spur track into a siding near the quarry and, as the track was up grade, was worked rather hard in so doing. There was evidence that hot cinders then came from the engine and were scattered over the ground. A fresh westerly wind was blowing across this track and the quarry toward the Cumming house and diagonally toward the main line tracks which ran approximately east and west in the vicinity of Bluemont station. The land between the quarry track and the Cumming's buildings was covered with trees, brush and grass and this inflammable condition continued on from the Cumming's house to the main line of the railroad broken only by a brook and a gravel road.

Shortly after the deceased and his men had eaten their lunch on the day mentioned and when they were about 1,200 feet west of the shelter station, their attention was called to a brush fire that was spreading from the direction of the quarry and the side track leading to it toward the Cumming's buildings. Those buildings were in danger and, in response to directions given by the deceased, the section men went up to where it was burning to try to put the fire out. There was some evidence that Keys told them to go up and try to protect Mr. Cumming's property but his exact language is not important. He went up the gravel road to help his men and there was testimony to the effect that when he was within about one hundred feet of the Cumming house he began to beat out the fire with his shovel. Some time afterwards his body was found at that point. Some of his clothing had been burned and there were burns on his body but the grass underneath it was still unburned. There was evidence that his death had been caused by suffocation due to the smoke and fumes from the fire; and also evidence that he had been overcome by his exertion in going up the hill before he reached the fire and had died because of a cerebral hemorrhage.

The defendant contended that the deceased was not engaged in interstate commerce when he died; that the fire was not due to its negligence; that death was due to natural causes; and that there was no liability because the deceased assumed the risk.

Though the evidence was conflicting, it was sufficient to justify the jury in finding that the deceased was trying, when he died, to get the fire under control for the purpose of protecting the railroad's main right of way and was, therefore, engaged in interstate commerce. There was also enough evidence to support a finding that he was overcome by the smoke and fumes he inhaled while fighting the fire. Furthermore, there was enough to enable the jury to find that the fire was started, when the engine backed the freight cars up the spur track into the quarry siding, by hot cinders which were then negligently scattered over the ground. The verdict for the plaintiff must be taken to have established each of these facts.

There was no evidence, however, that the defendant had caused the fire in any other way than by permitting hot cinders to escape from the engine which passed over the track leading to the quarry. Any possibility that the burning of the right of way by the section gang had anything to do with starting the fire was eliminated by the evidence and, moreover, both parties maintained that it did not. It was not only the kind of a fire which the deceased was employed by the defendant to put under control but was also one which was not shown to have been in any way more dangerous to fight than such brush fires usually are.

The plaintiff alleged in her complaint and the defendant admitted in its answer " * * * that under the rules and regulations of the defendant railroad company, the section men, including the section foreman, must be on the alert to discover fires ignited by passing engines or from other sources, and to bring said fires under control so as to protect the property of the railroad company or of the tracks and right of way * * * ". He was free to use his own judgment as to how he would do that as he was under no compulsion from the defendant as to how he should go about the work. He was himself the foreman in charge of it when he died and could, of course, take such measures as he thought best with proper regard for his own safety.

That the attempt to put a rather extensive brush fire under control when a brisk wind is blowing does involve more or less danger to men doing the work is self evident. Such danger as is usually inherent in that kind of employment is but.

a part of the risk which is involved and which the deceased assumed as a matter of law. This principle of law is applicable to suits brought under the Employer's Liability Act whenever Sec. 4 of the Act, 45 U.S.C.A. § 54, does not apply; and it does not in this case. Missouri Pacific R. Co. v. David, 284 U.S. 460, 52 S.Ct. 242, 76 L.Ed. 399; Boldt v. Pennsylvania R. Co., 245 U.S. 441, 38 S.Ct. 139, 62 L.Ed. 385.

[6] Such negligence on the part of the defendant as was here shown in causing the fire may not, perhaps, have been the breach of any duty it owed any employee who was hired to put brush fires, however started, under control when they endangered the defendant's property or the nearby property of others. But, though the absence of any negligence on which this action could be based would be decisive, we leave that point open for the present and put our decision upon the ground that in no event can there be a recovery in this suit because the inherent danger in work the deceased had undertaken to perform was not enhanced by any negligence of the defendant after the fire was started. He had for many years worked as a section man for the defendant. It cannot be doubted that he understood and appreciated whatever danger there was in fighting this fire. It is of no consequence that he may not have known that the defendant's negligence caused the fire to start for he knew, at least, that it had been started in some way and knew the conditions which the fire had created at the place to which he went to try to put it under control. His voluntary exposure of himself to such dangers as did confront him at the time he died involved only the risk of known dangers which were ordinarily incident to his employment. As was said in Butler v. Frazee, 211 U.S. 459, 467, 29 S.Ct. 136, 138, 53 L.Ed. 281, "* * * where * * * the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

For the reasons stated the defendant's motion for a directed verdict should have been granted. Seaboard Air Line Ry. Co. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas. 1915B, 475; Southern Pacific Co. v. Seley, 152 U.S. 145, 14 S.Ct. 530, 38 L.Ed. 391; Kohn v. McNulta, 147 U.S. 238, 13 S.Ct. 298, 37 L.Ed. 150; Chesapeake & Ohio R. Co. v. Nixon, 271 U.S. 218, 46 S.Ct. 495, 70 L.Ed. 914; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 171, 48 S.Ct. 215, 72 L.Ed. 513.

Judgment reversed.