WILLIAM TURNER v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

Decided March 30, 1907.

**Master and Servant—Assumed Risk.**

A servant is expected at all times while engaged in the master's business to exercise ordinary care to avoid injuring himself. He is expected to observe the ordinary operation of the laws of nature and must be held to know matters within the common observation and knowledge of a reasonably prudent man. In a suit for personal injuries caused by a sprain and rupture while lifting a heavy timber, evidence considered, and held to justify a verdict against the plaintiff.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*Stuart & Bell,* for appellant.—That the court erred in the fourth and tenth paragraphs for its charge, cited: Galveston, H. & S. A. Ry. v. Bonn, 17 Texas Ct. Rep., 793 (same case as 82 S. W. Rep., 808); Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Bonnett v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Bonn v. Galveston, H. & S. A. Ry. Co., 82 S. W. Rep., 808; Galveston, H. & S. A. Ry. Co. v. Udalle, 91 S. W. Rep., 331; Gulf, C. & S. F. Ry. Co. v. Grisom, 82 S. W. Rep., 671; San Antonio & A. P. Ry. Co. v. Waller, 65 S. W. Rep., 211; Texas & P. Ry. Co. v. Johnson, 89 Texas, 519; 1 Labatt Master and Servant, secs. 319 and 320, 438-440.

*Garnett & Eldridge,* for appellee.

CONNER, CHIEF JUSTICE.—Appellant instituted this suit in the District Court to recover damages for personal injuries alleged to have been received by him while in appellee's employ as a member of one of its bridge gangs under one H. L. Humphrey as appellee's vice-principal. Appellant alleged that on June 14, 1904, while said gang was working on a bridge about one mile east of Munster in Cooke County, said Humphrey directed and knowingly permitted appellant and two others to lift a heavy, water-soaked pile or bridge timber beneath the bridge, and that while they were lifting said piece of timber appellant's hip, back and side were wrenched and he was caused

to have a rupture on the front of his right side, that said pile or bridge timber was too heavy for three men to handle, which said Humphrey well knew, that on account of its weight at least six or eight men were required to safely handle the same; that appellant did not know that it was dangerous or unsafe for him to lift said timber with the help furnished, and that if he had known that it was unsafe or dangerous he would not have assisted in lifting it.

Appellee answered by general denial and pleas of contributory negligence and assumed risk. A jury trial resulted in a verdict and judgment for appellee, from which appellant has appealed.

It is urged that the fourth and tenth clauses of the court's charge are erroneous in that they impose upon appellant the duty of exercising ordinary care, when care was not required of him. The language of the charge in submitting the issue of assumed risk is to the effect that if, when appellant undertook to assist in carrying the piece of timber in question, "he knew that the number of men carrying it was not sufficient to carry it with safety, or if he could have known it by the exercise of ordinary care," the jury should find for appellee. The servant has the right to rely upon the assumption that the machinery, tools and appliances with which he is called upon to work are reasonably safe and that the business is conducted in a reasonably safe manner. He is not required to use diligence in these respects and does not assume the risks arising from the failure of the master to do his duty unless he knew of the failure and the attendant risks or in the ordinary discharge of his own duty must have acquired such knowledge, and the duty of the master in this regard doubtless extends to the exercise of ordinary care to employ a sufficient number of servants to perform the work with reasonable safety to themselves. But it seems to us that this principle can be but little, if any, benefit to appellant in this case. The undisputed evidence shows that on Thursday, June 9, 1904, appellant, together with said foreman and coemployes, began tearing down an old, and building a new bridge on the line of appellee's railway; the old bridge was torn down on Thursday and the timbers thrown below, where they remained until the following Tuesday, when the new bridge was completed, after which Humphrey, the foreman, addressing appellant and his coemployes, gave the following direction: "You boys go down there and carry everything out from under the bridge and pile it up to burn." The foreman did not direct the removal of any particular piece of timber, or give any other direction save to remove the debris from under the bridge, as quoted. The men began at the west end and had carried out about half of the refuse material before reaching the piece of timber in question. This was pine, about twelve inches square and ten or twelve feet long. It had been used in the old bridge as a stay, that is, as an upright timber between two pilings. One end of this piece had remained in some water into which it had fallen from Thursday, June 9, until Tuesday, June 14, when it was removed. Appellant Turner, C. L. McGuire and Will Smith carried the piece out, Turner and McGuire at one end with lug hooks, and Will Smith at the other end. There were five men in the bridge gang at the time, besides the foreman. Neither appellant nor the other parties engaged in carrying the piece of timber protested that it was

too heavy or called on the foreman for assistance, though he was present, and the evidence tends to show that he saw Mays, Smith, Turner and McGuire carrying out the timbers and just as they were about to lay it down. While the parties were carrying the piece appellant remarked to McGuire, "Ain't this about as heavy a load as you ever carried?" McGuire replied, "it was about as heavy a load as I had carried." Other than this appellant made no complaint at the bridge. Later in the day, however, about four o'clock in the evening, while the gang was engaged in the construction of a crossing several miles east of the bridge in question, and while carrying planks some three by ten and sixteen feet long, appellant made complaint of injury in his back and gave down.

While, as before stated, the servant has the right to assume that the master will conduct the business in which he is engaged in a manner consistent with his reasonable safety, it does not lay upon the master the duty of constant supervision in order that the servant may avoid defects or dangers that are as obvious to the servant as to the master. The servant is expected at all times, while engaged in the master's business, to exercise ordinary care to avoid injury to himself. He is expected to observe the ordinary operation of the laws of nature and must be held to know matters within the common observation and knowledge of a reasonably prudent man. Appellant neither alleged nor proved that he was inexperienced, and no attempt is made to defend him for a want of knowledge as to the probable weight of the piece of timber in question, or the reasonable number of men necessary to remove it, except upon the ground that it was "water-soaked." No evidence in relation to this feature of the case was offered that proved that this could have made any material difference. One end or a part thereof had merely remained in water from Thursday until the following Tuesday. It is not shown what proportion of the timber was so immersed, nor whether it was of a character or consistency to admit of any considerable absorption of water. At all events it seems to us that the weight of the timber must have been instantly apparent upon the effort to remove, and that ordinary care for his own safety would have prompted appellant to call for assistance or to have declined to undertake the removal with the number of hands engaged. It seems that sufficient assistance was readily available and we see no such complication in the situation as that a person of mature years, as was appellant, and of experience, as we are perhaps authorized to assume, might not readily observe the danger, if any. We conclude that as applied to these facts the charge will not require a reversal of the judgment. Appellant cites Galveston, H. & S. A. Ry. v. Bonn, 17 Texas Ct. Rep., 793, which we have considered but which we do not think is in necessary conflict with the conclusion reached herein, supported, as we think it is, by the following cases: Horton v. Ft. Worth Packing & Provision Co., 76 S. W. Rep., 211; Ft. Worth Stock Yards Co. v. Whittenburg, 78 S. W. Rep., 363; Smith v. Armour, 37 Texas Civ. App., 633; Haywood v. Galveston, H. & S. A. Ry. Co., 85 S. W. Rep., 433; the unreported case of Shook v. Pecos & N. Texas Ry. Co., decided by us December 24, 1904, in which writ of error was refused, and cases cited.

The only remaining assignment complains of the court's exclusion of

a mortuary table showing the expectancy of human life at appellant's age. In view of what we have said and of the jury's finding against appellant on the issue of appellee's liability, the assignment becomes immaterial. It is ordered that the judgment be affirmed.

*Affirmed.*

Writ of error refused.