## SEABOARD AIR LINE RAILWAY *v.* HORTON.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 541. Argued November 30, December 1, 1915.—Decided January 10, 1916.

An employé who knows of a defect arising from the employer's negligence and appreciates the risk attributable thereto and continues in the employment without objection or promise of reparation, assumes the risk notwithstanding it arises from the employer's breach of duty. *Seaboard Air Line* v. *Horton,* 233 U. S. 504.

Where the employer promises reparation of such a defect and the employé relying on such promise continues, he does not, during such time as is reasonably required for its fulfilment, assume the risk unless at least the danger is so imminent that no ordinarily prudent man would, under the circumstances, rely upon such a promise. *Id.*

Where, as in the present case, the injury was caused by the absence of a glass protector in front of a water gauge which burst, and the employé had continued after knowledge and promise of reparation, *held* that the trial court did not err in refusing to hold as matter of law

that the danger was so imminent that no ordinarily prudent man would continue the employment in reliance on the promise and that one so continuing did assume the risk.

Reasonable reliance by an employé on a promise of reparation and continuance in his employment for a reasonable period pending performance cannot be regarded as contributory negligence as matter of law; the request and direction of the employer has a material bearing on the question; and so *held* in this case that the question was properly submitted to the jury.

Authorities differ, and not yet decided by this court in this or prior cases, as to whether continuing the employment in presence of danger so imminent that no ordinarily prudent man would confront it, even where the employer has promised reparation, amounts to assumption of risk or contributory negligence.

Distinctions between assumption of risk and contributory negligence which were of little consequence when both led to the same result become more important in cases under the Employers' Liability Act where the former is a complete bar, and the latter merely mitigates the damages.

Whether continuing to use one defective apparatus instead of another apparatus amounted to proximate cause of injury, is at most a question for the jury if it be shown that the latter was not a safe instrumentality.

85 S. E. Rep. 218, affirmed.

THE facts, which involve the validity of a verdict and judgment in an action for injuries under the Employers' Liability Act, are stated in the opinion.

*Mr. Murray Allen* for plaintiff in error.

*Mr. Clyde A. Douglass*, with whom *Mr. William C. Douglass* was on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action, based upon the Federal Employers' Liability Act (35 Stat. 65, c. 149; 36 Stat. 291, ch. 143), was under consideration on a former occasion, when a judgment in favor of defendant in error was reversed and the cause remanded for further proceedings. 233 U. S. 492. There was a new trial, and the resulting judgment in favor

of Horton, the employé, having been affirmed by the Supreme Court of North Carolina (85 S. E. Rep. 218), the case is brought here again, with numerous assignments of error, of which, however, only a few need be noticed.

Plaintiff was injured while in the employ of defendant in interstate commerce. He was an experienced locomotive engineer, and was so employed when injured. His engine was equipped with a Buckner water gauge, a device attached to the boiler head for the purpose of showing the level of the water in the boiler, and consisting of a brass frame inclosing a glass tube 12 or 14 inches long, and ½ inch in diameter, the glass being about $^3/_8$ inch thick. The tube was placed vertically, and was connected with the boiler above and below, so that it received water and steam direct from the boiler and under a pressure of 200 pounds. In order to protect the engineer and fireman from injury in case of the bursting of the tube, a thick piece of plain glass, known as a guard-glass, should have been in position in slots arranged for the purpose in front of the water tube. Plaintiff took charge of the engine in question on July 27 or 28, 1910, and noticed at that time that the guard-glass was missing. He reported this to a round-house foreman, to whom such report should properly be made, and asked for a new guard-glass. The foreman replied that he had none in stock, but would send for one, and that plaintiff in the meantime should run the engine without one. He did so for about a week, and until August 4, when the water tube exploded, and the flying glass struck him in the face, causing the injuries upon which the action was grounded.

The principal insistence of defendant (plaintiff in error) is that upon all the evidence plaintiff, as a matter of law, assumed the risk of injury arising from the absence of the guard-glass. The rule applicable to the situation was expressed by this court upon the former review of the case, in the following terms (233 U. S. 504): "When the

employé does know of the defect [arising from the employer's negligence], and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employé relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

By motions for non-suit and for dismissal of the action, and by various requests for instructions to the jury, all of which were refused, defendant raised the point that although plaintiff reported the absence of the guard-glass to defendant's foreman and received a promise of repair, yet the danger was so imminent that no ordinarily prudent man under the circumstances would have relied upon the promise, and hence plaintiff, as matter of law, assumed the risk of injury.

But we do not think it can be said as matter of law that the danger was so imminent that no ordinarily prudent man under the circumstances would continue in the employment in reliance upon the promise. It was not the function of the guard-glass to prevent the bursting of the water tube, but only to limit the effect of such an explosion in case it happened to occur. That there was a constant danger that the tube might explode was abundantly proved, and was admitted by plaintiff. But the tube was designed to withstand the pressure of 200 pounds, and ordinarily did so. It was its proper function to do so. One witness said: "They may last a day, a week, a month, or a year, or it may last an hour, or shorter." The jury

might reasonably believe that such a water-glass would probably not explode in the ordinary use of it unless it was imperfect or defective in some respect other than the absence of the guard-glass, and that, since there was no evidence of this, Horton was justified in assuming that the danger of an explosion was not immediately threatening.

There is a substantial difference in the attitude of the employé towards the known dangers arising out of defects attributable to the employer's negligence, depending upon whether there has or has not been a promise of repair. It was clearly expressed in a well-reasoned opinion by the Supreme Court of New Jersey (*Dowd* v. *Erie R. R. Co.,* 70 N. J. L. 451, 455) thus: "To the rule that the servant assumes the obvious risks of the employment, an exception is made where the master has promised to amend the defect or to make the place safe, and the servant continues the work in reliance upon the promise. . . . The master is exempted from liability in the case of obvious risks for the reason that the servant, by continuing in the employment with knowledge of the danger, evinces a willingness to incur the risk, and upon the principle *volenti non fit injuria.* But when the servant shows that he relied upon a promise made to him to remedy the defect, he negatives the inference of willingness to incur the risk."

To relieve the employer from responsibility for injuries that may befall the employé while remaining at his work in reliance upon a promise of reparation, there must be something more than knowledge by the employé that danger confronts him, or that it is constant. The danger must be imminent—immediately threatening —so as to render it clearly imprudent for him to confront it, even in the line of duty, pending the promise. The danger of the explosion of the water-glass, which normally should withstand the pressure to which it was subjected

but which might probably explode at some time near or remote, cannot be said, as matter of law, to have been so imminent as to import an assumption of the risk by Horton notwithstanding the employer's promise to replace the guard-glass. It would require a much plainer case than this to justify taking the question from the jury.

It is insisted that the trial court erred in refusing to instruct the jury that plaintiff was guilty of contributory negligence as a matter of law. This, also, is based upon the ground of the obvious and imminent nature of the danger to plaintiff arising out of the absence of the guard-glass. But the reasonable reliance of the employé upon the employer's promise to repair the defect is as good an answer to the charge of contributory negligence as to the contention that the risk was assumed. The employer's direction or request that the employé remain at work pending performance of the promise has a material bearing upon the employé's duty in the meantime, and therefore upon the question of his negligence, which involves the notion of some fault or breach of duty on his part. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 503. Hence, the question of Horton's contributory negligence was at best a matter for the jury to determine.

All the disputable questions of fact were submitted to the jury under instructions that were sufficiently favorable to defendant. The jury were told, in substance, that if they found the absence of the guard-glass was known to plaintiff, and he reported the defect and was given a promise to repair, and if he knew and appreciated the danger incident thereto, and the danger was so obvious that a man of ordinary prudence would not have continued to use the water-gauge without the guard-glass, then the plaintiff assumed the risk. This was unduly favorable to defendant, in that it omitted to state that in order to qualify plaintiff's right to rely upon the

promise of reparation the danger must be imminent as well as obvious. But, besides this, we deem it proper to say, in view of the fact that the instruction referred to seems to have been intended to conform to our opinion delivered upon the former writ of error, that we did not then intend to decide whether an employé remaining at work in reliance upon the employer's promise to repair a defective appliance, but where the danger known is so imminent that no ordinarily prudent man under the circumstances would remain at work in reliance upon the promise, should be held to assume the risk, or, rather, to be guilty of contributory negligence. What we said was that the employé, in the situation described, "does *not* assume the risk *unless, at least,* the danger be so imminent," etc. While most courts agree that an employé cannot, without impairing his right to recover from the employer, remain at work in the presence of a known danger so imminent that no reasonably prudent man would confront it, even where the employer has promised reparation, they differ as to whether this is to be placed upon the ground of assumption of risk or of contributory negligence. See *Hough* v. *Railway Co.*, 100 U. S. 213, 224, 225; *Dowd* v. *Erie R. R.*, 70 N. J. L. 451, 456; *Clarke* v. *Holmes*, 7 Hurl. & Norm. 937, 945. The distinction, which was of little consequence when assumption of risk and contributory negligence led to the same result, becomes important in actions founded upon the Federal Employers' Liability Act, which in ordinary cases recognizes assumption of risk as a complete bar to the action, while contributory negligence merely mitigates the damages, as was pointed out when the case was here before. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 503. The disputable point above referred to was not then presented for decision. Nor is it now presented, for upon the last trial the court, in the instruction given to the jury, put the plaintiff (upon the hypothesis of his per-

sisting in the face of an imminent danger, where a man of ordinary prudence would not) in the position of assuming the risk—a position more favorable to defendant (plaintiff in error) than that of contributory negligence.

It is further argued that Horton's own conduct in using the Buckner gauge without the guard-glass, when he could have cut this off, and used the gauge-cocks, said to be an entirely safe instrumentality, was unquestionably the proximate cause of his injury. But there was evidence to show that the gauge-cocks themselves were not a safe instrumentality, because of their liability to become clogged. Hence, at the utmost, there was here no more than a question for the jury.

Other points are raised, but they are quite unsubstantial, and require no particular mention.

*Judgment affirmed.*