ANZOLOTTI v. McADOO, Director General of Railroads.

· (District Court, S. D. New York. December 19, 1919.)

1. **MASTER AND SERVANT** ☞203(1), 227(1)—ASSUMPTION OF RISK DISTINGUISHED FROM CONTRIBUTORY NEGLIGENCE.

The distinction between contributory negligence and assumption of risk depends on whether the servant has made a careless choice between safe and unsafe ways of discharging his duties, or whether he has failed to take some precaution outside of the discharge of those duties.

2. **MASTER AND SERVANT** ☞213(1)—RISKS ASSUMED BY SERVANT.

A longshoreman, wheeling bags of flour from a car down an inclined plank and through a short gangway between piled bags on the side of a pier, and along a central fairway used by trucks, who, gaining speed with his heavy load going down the plank, on turning into the fairway struck a truck and was injured, *held* not chargeable with assumption of the risk.

At Law. Action by Pasquale Anzolotti against William G. McAdoo Director General of Railroads (Lehigh Valley Railroad Company). On motion to set aside a verdict for the plaintiff in an action to recover damages under the Employers' Liability Act (Comp. St. §§ 8657–8665). Denied.

The plaintiff was a longshoreman employed by the Lehigh Valley Railroad Company at a pier in the East River, New York. On the day in question he was engaged in carrying four bags of flour on a hand truck from a car on a car float alongside one of the piers in the river to the deck of the pier. Planks about 18 feet long ran from the floor of the car to the deck of the pier, the difference in level between the two being about 3 feet. Bags of flour were piled upon the pier about 9 or 10 feet high, making a gangway from the side of the pier towards the center, through which the plank ran. Through the middle of the pier and at right angles with this gangway ran a passage or fairway, in which trucks and carts went to and fro, taking freight on and off the pier, and this fairway the gangway connected with the edge of the pier. The flour, piled as it was, made a wall on either side of the gangway, so that no part of the fairway, except where the two met, could be seen from the edge of the pier or the floor of the car.

On the day in question the plaintiff took four bags of flour, weighing, together with the truck, some 700 pounds, and started down the plank through the gangway, meaning to turn to the left into the fairway and pile the flour further down. Owing to the weight of the load and the slope of the plank, he was obliged to take the plank upon the run, and, as the edge of the plank was only 4 feet from the turn into the fairway, he was on the run at the turn as well. In so doing he came into collision with a truck slowly moving up the fairway, and not visible to him at the time he started from the car.

Upon the trial the case was left to the jury upon the question of the defendant's negligence in failing to provide the plaintiff with a safe place to work, and upon the plaintiff's contributory negligence in taking so large a load as to cause him to run, and in failing to ascertain before taking the load whether anything was coming up the fairway. The defendant asked for a dismissal of the complaint on the ground that the plaintiff had assumed the risk and that the question of assumption of risk should be left to the jury, both of which requests were refused. The exceptions taken to this refusal are the basis of this motion.

William H. Wack, of New York City, for plaintiff.
Clifton P. Williamson, of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above). My refusal to dismiss the complaint because of the plaintiff's assumption of risk, or at any rate to leave that question to the jury, can, of course, be supported only upon the theory that the evidence presented no question of the assumption of risk, but only a question of contributory negligence. If I am wrong in that, obviously the verdict should not stand. The Employers' Liability Act, in establishing a distinction between these two defenses, makes it necessary more carefully to discriminate between them than was the case before, for contributory negligence is no longer a defense, but only goes in mitigation, while assumption of risk remains, as before, a bar. It must be confessed, however, that the line of distinction is not wholly clear in the books.

Both defenses presuppose that the injury has in fact arisen through some fault of the master; that is, some act, or some inaction, where action is required, which would ordinarily result in injury to the servant. Both presuppose also that the servant could have avoided the result, had he chosen sufficiently to regard his own safety, and that, therefore, he has joined in causing the injury, at least to this extent, that he voluntarily places himself in a position where to his knowledge he is exposed to the results of the master's fault. The differences can best be understood by considering the divergent approaches to the general question of the servant's part in the eventual injury, which each notion involves. The idea of an assumption of risk started in the servant's supposed acceptance of the dangers, when he took the job with knowledge of them. He remained exposed to them, whether he was careful or careless in his own work. Thomas v. Quartermaine, L. R. 18 Q. B. D. 685; Schlemmer v. Buffalo, etc., Ry., 205 U. S. 1, 11, 12, 20, 27 Sup. Ct. 407, 51 L. Ed. 681. It makes no difference whether or not one imputes to him an agreement, as is sometimes done. Narramore v. Cleveland, etc., Ry., 96 Fed. 298, 301, 37 C. C. A. 499, 48 L. R. A. 68; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 61 C. C. A. 477, 63 L. R. A. 551. The idea of contributory negligence, on the other hand, started with those cases where the servant, having the choice of safe and unsafe ways of discharging his duties, chooses wrong; the choice being imposed upon him through the master's fault. Schlemmer v. Buffalo, etc., Ry., 220 U. S. 590, 596, 31 Sup. Ct. 561, 55 L. Ed. 596; Erie R. R. v. Purucker, 244 U. S. 320, 324,

325, 37 Sup. Ct. 629, 61 L. Ed. 1166; Maloney v. Cunard S. S. Co., 217 N. Y. 278, 283, 111 N. E. 835.

Now these two approaches themselves converge. The Supreme Court has expressly declined to commit itself upon whether a servant who continues in the presence of imminent danger assumes a risk, or negligently contributes to his injuries. Seaboard Air Line v. Horton, 239 U. S. 595, 601, 36 Sup. Ct. 180, 60 L. Ed. 458. In face of this reserve it must be owned that it is hazardous to take sides, nor is it necessary in the case at bar, for I may concede for argument that in such cases the servant assumes the risk.

[1] Further, I may assume that in order to establish an assumption of risk the servant need not be faced with a choice between throwing up the work or losing all right of recovery. If a remedy for the danger is at hand, and he fails to use it, his inaction may be evidence of assumption. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Id., 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458. Yet, if the doctrine of contributory negligence is to remain at all, I think we must interpret language like that of Mr. Justice Day in Schlemmer v. Buffalo, etc., Ry., 220 U. S. 590, 596, 31 Sup. Ct. 561, 55 L. Ed. 596, as meaning that the precautions which the servant omits when he contributes negligently to the injury are choices required of him only in the discharge of the duties imposed upon him, and not precautions which call upon him to do something outside. At any rate, without attempting any exhaustive definition, it appears to me quite safe to say that when the injury arises from a failure to choose correctly between two ways of discharging those duties, one of which is safe and the other hazardous, the servant has not assumed the risk, but has negligently contributed to the injury. This may not be the final line between the notions; but, if not, I believe it safely excludes all cases of assumption of risk, unless that idea is to absorb the other altogether.

Jacobs v. Southern R. R., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970, may be thought to look the other way, since the servant might have waited till the locomotive stopped. As the crew was only shifting cars, this would hardly seem to have involved an abandonment of the work. I own I should have supposed it a case of contributory negligence, and possibly the decision ought to stand against the distinction I have attempted. However, it is to be observed that the court did not discuss the present question at all, but assumed that the important point was whether section 4 of the Employers' Liability Act (Comp. St. § 8660) covered more than omissions by the master of statutory requirements. I cannot agree that the case stands for a decision that the servant assumes the risk when he selects a dangerous way of discharging his duties, instead of a safe way, which is open.

[2] Coming now to the case at bar, it seems to me quite plain that the defendant did not prove a case which called for the submission to the jury of the plaintiff's assumption of any risk. It did not appear that the plaintiff had no way in the discharge of his duties to avoid turning the corner on a run. Several possibilities suggest themselves; for example, it would have been perfectly possible for the plaintiff to

let the feet of the truck slide on the plank for the earlier part of the decline, thus acting as a partial brake. By so doing he could have diminished the momentum at the turn. Nor does it appear that, if the plaintiff had explained the facts and asked that he be allowed to take three bags, he would have been refused. Nor does it appear that the planks had no skids, such as are in common use, which the plaintiff could have used as a brake upon his wheel.

Now the defense is a bar, and must be proved as well as pleaded. If, as I think, it arises only when the servant has discharged the duties imposed upon him with proper heed, that must be shown. The defendant must show that the dangers arise either from any continued discharge of the work at all, or from an omission to do something which was not a part of the discharge of his duties.

Finally, if the test be one of degree, as is suggested in Schlemmer v. Buffalo, etc., Ry., 205 U. S. 1, 12, 27 Sup. Ct. 407, 51 L. Ed. 681, it is clear that the immediate cause of the plaintiff's injury was not any pre-existing defect in the appliances or conditions, but because he had no warning of the cart coming in the fairway. His failure to inform himself whether there was one or not, being the immediate cause of his injury, was in this view contributory negligence. While I prefer to regard that failure in the other light, it appears to me that the defendant is in the dilemma of accepting one interpretation or the other. Certainly the statute has left some scope for the doctrine of contributory negligence.

The motion is denied.