### SOUTHERN RY. CO. v. MILLER.*

(Circuit Court of Appeals, Fourth Circuit. April 26, 1920.)

No. 1754.

1. **Master and servant** ⇐286(8)—**Negligence in not using insulating shield held question for jury.**

Evidence that an employé on a railroad pile driver was required to work within 2½ feet of a highly charged uninsulated wire of an electric block signal system, and that there was on the market a safety device which could have been put over the wire for his protection, *held* sufficient to go to the jury on the issue of the railroad's negligence, though the company was shown to have done all that is customarily done by other railroads in like circumstances.

2. **Master and servant** ⇐288(5)—**Assumption of risk held question for jury.**

In an action for the death of a railroad employé, killed by an electric wire touched while working on a pile driver, evidence that he had general knowledge of the danger and received some warning, which was uncertain as to the time of the warning and as to whether it was calculated to give him a real sense of his peril, does not establish assumption of risk as a matter of law.

3. **Death** ⇐79—**Surviving wife, though separated from husband, may recover substantial damages.**

A wife, who had separated from her husband soon after their marriage, and had thereafter received no support from him, but who was not divorced, can recover substantial damages for his death.

4. **New trial** ⇐162(1)—**Judgment after remittitur affirmed.**

Where, in death action, widow was awarded $3,500, and child $7,000, and court, on motion for new trial for excessive recovery, affirmed award as to widow, but reduced award to child to $3,500, and granted a new trial as to child unless abatement of excess of verdict be filed, judgment entered after filing of abatement affirmed.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

---

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied August 3, 1920.

Action by Alma R. Miller, as administratrix of the estate of E. L. Miller, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari denied 254 U. S. ——, 41 Sup. Ct. 15, 65 L. Ed. ——.

Thomas B. Gay, of Richmond, Va. (Munford, Hunton, Williams & Anderson, of Richmond, Va., on the brief), for plaintiff in error.

Robert H. Talley and D. C. O'Flaherty, both of Richmond, Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

KNAPP, Circuit Judge. The suit grows out of an accident which happened in this way:

In July, 1917, plaintiff in error, defendant below, was constructing a passing track along the easterly side of its main tracks near Gilbert's Station, Va. The passing track crossed a small stream, which had to be bridged, and this made it necessary to drive a number of piles. The pile driver was mounted on the end of a flat car, which was pushed in from the north on the passing track to the proper point for driving the piles. The apparatus consisted of two metal leads about 42 feet high, between which the piles were hoisted and held in position for driving. The leads could be so moved as to allow piles to be driven at any point on the circumference of a circle around the end of the car. A steel ladder some 10 or 12 inches wide, with rungs about 12 inches apart, extended along the outside of the east lead nearly to its top. In operating the pile driver it was necessary for a man to climb the ladder and place an iron cap or bell on the top of a pile, after it was put in position, so that the heavy weight used for driving, when set in motion, would strike the bell and drive the pile down without injury. Miller, plaintiff's intestate, was engaged in this work when he met his death in the manner presently to be described. He was about 36, a man of intelligence, had been a member of defendant's "bridge gang" for several years, held the position of assistant foreman, and was familiar with the duties of his employment. He was married in December, 1912, but lived with his wife only 3 or 4 months; a child born the following September he had never seen; and at no time had he contributed in any way to the support of wife or child.

The movement of trains on this portion of defendant's road was controlled by an electric block signal system, which had been installed a few months before. In the operation of this system an electric current of some 4,400 volts was transmitted over three uninsulated wires supported by porcelain holders mounted on wooden cross arms affixed to chestnut poles about 200 feet apart. As nearly as we can make out, the line of poles at the point where the accident occurred was east of and a little less than 10 feet from the eastern rail of the passing track; the nearest wire was 23 feet and more above, that is, higher than this rail, and 31 feet from the ground. This signal system is the same as that used by many of the leading railroads of the country; it was not claimed to be defective from improper construction or want of repair.

On the day in question two piles had been safely driven, one after the other, at points further away from the electric wires. The leads were then turned or moved to the proper position for driving a third, nearer the wires, and secured in that position. The third pile was thereupon hoisted between the leads, and Miller went up the ladder, as he had twice before that morning, to put the bell on top of the pile. Some of the men observed him in the act of placing the bell, and just after he had done so, and started down, and one witness testifies that he called out, "All right," or something to that effect. Then for a brief space it appears that no one was looking, and precisely what happened can only be conjectured. A few moments later a peculiar sound was heard, and Miller was seen with his feet on the ladder and the back of his head on the live wire, his body rigid and leaning from the ladder at an angle of about 45 degrees. He died almost immediately.

Witnesses who saw him differ in their estimates of Miller's distance from the wire when he was putting the bell on the pile; one or more of them saying that it was about $2\frac{1}{2}$ feet. It would seem quite as important to know how much clear room he had in which to do his work. Bibb, the foreman, a witness for defendant, says that the ladder was 4 feet 8 inches from the nearest wire, and evidently the distance could not have been greater. Indeed, the fact that Miller's body, in the position and at the angle described, reached from ladder to wire, indicates that they were even closer together. At any rate the margin of safety, so to speak, did not exceed, and was perhaps considerably less, than $4\frac{2}{3}$ feet. To work in a space of such narrow limits was undoubtedly dangerous.

The negligence set up in the declaration, repeated in various forms in the several counts, is in substance that defendant failed to provide Miller with a reasonably safe place for doing his work, in that it required him to work in close proximity to a highly charged wire, contact with which would be fatal, without insulating the wire at that point or otherwise protecting him from danger, and plaintiff asserts that such protection should have been afforded in one or another of the ways mentioned in testimony.

[1] The fact that Miller was put to work in a dangerous place did not of itself show or permit the inference that defendant was negligent. To maintain the suit it was therefore incumbent upon plaintiff to point out some feasible means which defendant might have employed, and reasonably ought to have employed, for safeguarding its employé in the performance of a hazardous task; and the immediate question is whether the evidence in that regard was sufficient to raise an issue of fact for submission to the jury. It is said in the first place, as must be obvious, that these wires might have been rendered harmless by turning off the electric current during the time needed for driving the piles. But this "would result in the suspension of the automatic block system" on that section of the road, as a witness for plaintiff testified, and thus prevent or interrupt the movement of trains. In view of the consequences of stopping the operation of the signal system, we are clearly of opinion, without discussing the

point, that defendant was not required to neutralize the wires by cutting off the current, and that it is not chargeable with negligence for failure to adopt this means of protection.

Again, it is said that the wires could have been temporarily moved to a greater distance from the passing track, and thereby ample space provided for Miller's work. But this method of securing safety was shown to be impracticable, because the wires in question were closely paralleled on the east by the main line of the Postal Telegraph Company carrying numerous through wires between Washington and Atlanta. The existing conditions in this respect are undisputed, and it is enough to say, without going into details, that it was not feasible, and defendant could not reasonably have been expected, to move these wires further away in order to protect Miller from the risk of accident. It must therefore be held that negligence cannot be predicated upon the fact that the wires were not removed.

A third method of protection which might have been adopted, as plaintiff alleges, is described by one of her witnesses, an electrical engineer, as follows:

"Then there can be a protecting device furnished the men, such as, the most feasible, the Marshall line protectors. That is merely a device made of rubber and canvas, which can be placed over the wire, held on by straps on the end, and when that is in place, you may say for any reasonable voltage, I mean except extremely high voltage, that it is a perfectly practically safe protection, and they remain so very satisfactorily. The Marshall shield is a quite commonly used device. * * * I think the Marshall line protector shield has been used in this country, or has been on the market, for about ten years. They started first about 1908, I think. They have been extensively advertised, and I have seen lists prepared—of course, I have no way of knowing how many central stations use them, but I have seen lists of over 100 light companies, and also some railroads, the New York Central, for example, who use them in their work; and I should think it would be a device used among electrical engineers from the amount of advertising they do."

On cross-examination the witness admitted that the ordinary usage of the Marshall shield "is not so much on transmission lines," with which he was not familiar, "as in the more congested distribution centers," and that he "never heard of a man being similarly situated as Mr. Miller was at the time of the accident using one of these devices." Expert witnesses for defendant stated that this shield was used only by skilled electricians working on the charged wires themselves, and not for the protection of persons doing other work in the vicinity of such wires; and one of them also said that the shield could not be used with safety in such a place as Miller was at work, because of its liability from causes mentioned to lose its protective quality.

Was plaintiff entitled, on the proofs above outlined, to go to the jury on the issue of defendant's negligence? The case is exceedingly close on this issue, and no conclusion can be free from doubt; but we are constrained to hold, after painstaking study of the whole record, that the court below did not err in refusing to direct a verdict for defendant. The duty of affording reasonable protection to an employé is measured by the nature and degree of peril to which the employé is exposed. Very much therefore depends, as seems to us, upon the amount of clear space that Miller actually had for doing

his work. If the ladder alongside the lead was nowhere nearer to a charged wire than 4 feet 8 inches, as the foreman testified, it fairly might be said, and perhaps should be held, that he had room enough for belling the pile without serious risk, save from his own gross negligence, and that defendant was not under obligation, in the exercise of reasonable prudence and caution, to save him from the unlikely chance of contact by some method of insulation.

On the other hand, if the proper performance of his task brought his body within 2½ feet of the wire, as the jury may have believed, he was put to work in a place of such extreme and manifest danger as warranted a finding that defendant was negligent in failing to do more than warn him of the risk. In short, we think there was sufficient testimony to furnish a basis for inferring that defendant ought to have protected the wire in some way, and we also think that enough was shown in relation to the Marshall shield to sustain the further finding that this device was a "known and practical way" for safeguarding Miller in the performance of a dangerous task.

It is argued at length and with much earnestness that defendant is shown to have done all that is customarily done in like circumstances and therefore should stand excused. There are two answers to the contention: Evidence of custom is always competent and often highly persuasive, but it cannot be held to be conclusive. The true test, after all, is what would be done by a reasonably prudent employer in the particular situation, and where that situation is peculiar and unusual the rule of custom has but limited application, because the basis for reliable comparison is wanting. In driving these few piles in close proximity to wires of high voltage, defendant was not carrying on a common and familiar occupation, but doing a transient piece of work under exceptional conditions, and the duty it owed to Miller is to be estimated, not by what other railroads do in cases of some general similarity, but by the exigency which it had brought about at that particular time and place. Whilst defendant was not chargeable with negligence for failing to cut off the current or move the wires, it was of course at liberty to make the place safe in either of those ways; but, since it elected not to do so, it may well be held under obligation to resort to some other method of safeguarding its employé; and we are of opinion, as already stated, that there was testimony from which the jury were authorized to find that the insulating shield in question ought to have been utilized for Miller's protection.

[2] It is further argued that Miller assumed the risk, with full knowledge of the danger, and therefore the defendant was without liability. It is true that Miller was a laboring man of intelligence and long familiar with the operation of pile driving; but it appears that he had never until that morning been called upon to do his work in any place which exposed him to the risk of contact with these transmission wires. That he had general knowledge of the danger must be assumed, and that he had some warning is undisputed; but the testimony is rather uncertain as to the time when that warning was given or repeated, and especially as to whether it was calculated to impress him with a real and abiding sense of the peril he was about

to encounter. In short, we are of opinion that the testimony does not warrant us in holding that the defense of assumption of risk was established as matter of law. As the Supreme Court said in Seaboard Air Line Railway v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475):

"On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work."

See, also, the pertinent comments of Judge Learned Hand on contributory negligence and assumption of risk under the Employers' Liability Act (Comp. St. §§ 8657–8665) in the recent case of Anzolotti v. McAdoo, Director General (D. C.) 262 Fed. 568.

This in effect disposes of the principal questions raised by defendant, and sufficiently answers the argument based on exceptions to instructions to the jury, both those given and those refused. To take up these numerous exceptions would unduly extend this opinion and serve no useful purpose. We therefore content ourselves with saying that they have been carefully examined and found not to involve reversible error.

[3] The court was asked to rule that only nominal damages could be recovered, because Miller and his wife had separated soon after their marriage, and he had not thereafter contributed to her support. But there had been no divorce, and nothing appears to show that she might not at any time have enforced her conjugal rights under the laws of Virginia. This being so, she was entitled to substantial damages, if the jury found in her favor, as seems to be plainly held by the Supreme Court in New Orleans & N. E. R. Co. v. Harris, 247 U. S. 367, 372, 38 Sup. Ct. 535, 62 L. Ed. 1167.

[4] The jury returned a verdict in favor of plaintiff for $10,000, and directed that $3,000 thereof be paid to the widow and $7,000 to the infant child. On motion for a new trial the court cut down the verdict in favor of the child to $3,500, and ordered that judgment be entered "in favor of the widow for the amount of the verdict, $3,000, and for the child in the sum of $3,500 upon condition that an abatement to that amount will be assented to; if not as to the child, the verdict will be set aside." Such an abatement was filed in due form and judgment entered accordingly. This is assigned as error. It is sufficient to say that affirmance of the judgment eliminates the question.

Affirmed.