Argued March 20; affirmed December 30, 1930

# ADSKIM *v.* OREGON-WASHINGTON R. & NAV. CO.

### (294 P. 605)

*Frank C. Hanley* of Portland for respondent.

*W. A. Robbins* of Portland (A. C. Spencer and F. J. Betz, both of Portland, on the brief) for appellant.

COSHOW, C. J. ■ Questions of law which have arisen and been decided upon a former appeal become the law of the case so far as applicable to the facts developed on the second trial. *Reed v. Hollister,* 106 Or. 407 (212 P. 367); *Douglas v. Rumelin,* 130 Or. 375, 377 (280 P. 329); *Bloech v. Hyland Homes Co.,* 128 Or. 292, 299 (274 P. 318); *Hostetler v. Eccles,* 112 Or. 572, 578-9 (230 P. 549).

In addition to the testimony adduced by plaintiff in the former trial he introduced the deposition of J. R. Livingston, who was night operator in the employ of defendant at Hilgard at the time of the accident. Mr. Livingston testified that he went to work at 4:00 p. m. on the day of the accident; that at that time there was a pile of cinders and gravel between the main and passing tracks, and that he saw plaintiff stumble over it.

■ Defendant insists on the same defense in the second trial that it did on the first. It contends now, as it did on the first appeal, that there is not sufficient evidence of neglect on the part of defendant to justify the submission of the case to the jury. The evidence adduced at the first trial was repeated at the second trial with some additional testimony. For that reason the decision on the first appeal is controlling in this appeal upon that issue. There is more than a mere scintilla of evidence of negligence in the record. There is substantial material evidence of negligence. The additional evidence was merely cumulative.

■ Did plaintiff assume the risk? That question presents the principal issue on this appeal. Defendant argues that in alighting from the train in the darkness without knowing where he was going to land plaintiff assumed the risk of the injury he received as a result. That question was also decided in the former appeal against defendant.

Defendant contends that plaintiff alighted from the train while it was moving from five to eight miles an hour to save himself the exertion of remaining on the train until it stopped and then walking from 800 to 900 feet to the station. The evidence tends to show that plaintiff's conduct in alighting from the moving train

was the customary, ordinary and usual practice of brakemen. He was required to go to the station to get the list of cars his train was to pick up at Hilgard.

We cannot say as a matter of law that plaintiff so alighted from the train as a matter of personal convenience. Neither can we hold plaintiff chose a dangerous method of doing his work when he could have taken a safe way. This contention was also disposed of in the first appeal. There is no material difference in the evidence on that issue, if issue it may be called, between the first trial and the second. Defendant concedes that brakemen were accustomed to proceed as plaintiff did.

There is evidence in the record tending to show that there was a path from the passing track where plaintiff alighted from the train to go to the station, and said path was habitually used by brakemen when going from the train to the station for orders. The evidence also tends to show that the alleged pile of cinders and gravel obstructed that path. The evidence also tends to show that plaintiff had no knowledge that said obstruction was in the path. The facts being substantially the same in the second trial as in the first the decision on the former appeal is the law on this appeal on that issue.

■ Defendant insists that plaintiff used an inefficient lantern although the defendant provided for his use an efficient lantern. Much discussion appears in the briefs regarding the extent the electric Conger lantern reflected its rays and whether or not that reflection was directly down or circular. In our view of the case it is not very material. Defendant acquiesced in the use of the kind of lantern employed by plaintiff at the time he was injured. Some of the brakemen bought their own electric lanterns and defendant supplied them with the light bulbs to be used in said lanterns.

Defendant is not in a situation, therefore, to complain about the particular lantern used by the plaintiff. It furnished the light used by the plaintiff and cannot now be heard to say that it was an improper light. The position taken by defendant with reference to the lantern is not consistent. It argues that the light was cast directly down in one part of its brief and in another part thereof argues that the lantern used by plaintiff on that occasion threw a circular light farther than that testified to by plaintiff. Defendant introduced testimony tending to prove that plaintiff should have seen the alleged pile of cinders and gravel. Regardless of that fact and in the light that defendant supplied the lamp used in the lantern there is substantial evidence in the case tending to show that plaintiff did not see the alleged obstruction between the main track and siding track until he stumbled over it.

■■ It is not the duty of this court to weigh the evidence adduced by the opposing parties nor to pass on the credibility of the witnesses in an action at law. We cannot say as a matter of law because it was possible for plaintiff to have discovered the obstruction that he did so before he stumbled over it. It was for the jury to determine whether or not he ought to have seen the obstruction. One on a moving car will not see as distinctly as one who is standing looking at an object.

The witness Livingston, whose deposition was taken, said he could see the obstruction some 20 or 25 feet therefrom while he was standing on the platform of the station. But the witness Livingston saw the obstruction when he went to work at 4:00 o'clock in the afternoon. He knew it was there. Plaintiff testified that he did not know it was there, had no warning that it was there, and there was no light upon it to attract his attention.

■ We agree with the opinion in the former appeal that that question was for the jury to determine and its verdict concludes this court upon that issue. The fact that there was no evidence regarding the power of the electric Conger lantern in the first trial can make no difference so far as the question is one for the jury to answer. We cannot say as a matter of law because the electric lantern did not cast its rays as broadly as the oil lantern would have done that plaintiff assumed the risk of stumbling over an object which should not have been between the two tracks.

■ Defendant's testimony tends to show that there was no obstruction at the place plaintiff stumbled causing his fall. Defendant's testimony was addressed to the jury for the purpose of proving that no such pile of cinders and gravel as plaintiff described was at that place. There was a direct conflict on that matter between plaintiff and defendant's evidence. The matter was properly submitted to the jury for its decision.

■ Both briefs are devoted largely to discussing the weight of the testimony. We must confine our investigation to determining whether or not there is material evidence tending to support the allegation of negligence. In view of the fact that this very question was thoroughly considered on the former appeal and that the only additional evidence in the record is cumulative requires us to hold that the question of negligence was determined in the former trial and that is the law of this case.

■ Another difference between the evidence on the two trials claimed by defendant is that it was not clearly shown at the first trial that it was necessary to place ballast between the main and passing tracks at Hilgard. This argument might be persuasive were it

not for the fact that defendant insisted at the trial that there was no ballast left between the two tracks at the time plaintiff was injured. It is not claimed that it was necessary to leave ballast between the two tracks so as to form an obstruction there.

If in alighting from the train plaintiff had found conditions as they usually were at that place and stumbled and fell a different question would be presented. The evidence adduced by defendant tends to show that defendant did not leave ballast in front of the station overnight without such ballast having been spread. It denies absolutely that a pile of ballast, such as is described by plaintiff in the instant case, was there. One would imply from this evidence that defendant intended to keep the space between the passing tracks, where brakemen were wont to travel when alighting from a train to go to the station for orders, clear and free from all obstructions.

Defendant is not charged with negligence because it was ballasting its tracks in the usual manner but according to the testimony of defendant it was not usual to leave ballast in an irregular pile so as to obstruct a passageway for brakemen. Whether or not it was negligence for it to do so was a question of fact which the jury has determined.

We would not be justified in analyzing and discussing the many cases cited by both parties upon the issue of assumption of risk. The additional evidence adduced by both parties upon which they base their argument is not different in nature from the evidence adduced in the first trial. Every case of this kind must depend upon the evidence adduced at the trial.

■ One of the leading cases cited by defendant is *Seaboard A. L. R. Co. v. Horton,* 233 U. S. 492 (34 S. Ct.

635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.) The doctrine in that case is to the effect that an employee assumes the risks of the ordinary dangers incident to his employment. The case involves the question of whether or not an employee remaining in the performance of his duty after he discovered a defect in an appliance with which he had to work assumed the risk. The case was cited in the former appeal of the instant case to the effect that said Federal Employers' Liability Act controls a case involving the injury of an employee resulting from the employer's negligence when the employer is engaged in interstate commerce. In cases cognizable in the federal courts the federal act supersedes the state law.

The facts in the Horton case are not applicable to the instant case. In the latter it is not claimed that plaintiff knew of the alleged pile of cinders and gravel prior to the time of the accident. In the Horton case the principal point in controversy was whether or not Horton assumed the risk of injury from a defective device by continuing to work after discovering such defect. The Horton case was remanded and a new trial held and plaintiff again recovered a judgment based on a verdict. On the second appeal the judgment was sustained: *Seaboard A. L. R. Co. v. Horton,* 239 U. S. 595 (60 L. Ed. 458, 36 S. Ct. 180, 184).

We are of the opinion that the court did not err in refusing the proferred demonstration of a lantern said to be similar to the one plaintiff was using at the time of alighting from the train just before he suffered the injury. Conditions were not the same nor was the lamp the same. Evidence of that nature may be received or rejected in the discretion of the trial court: Oregon Code 1930, § 9-720 (Or. L., § 792); *Leonard v.*

*Southern Pacific,* 21 Or. 556 (28 P. 887, 15 L. R. A. 221); *State v. Fletcher,* 24 Or. 295 (33 P. 575); *Kohlhagen v. Cardwell,* 93 Or. 610, 616-8 (184 P. 261, 8 A. L. R. 11).

It is contended by defendant that the instructions on the measure of damages was erroneous in that they left to the jury a field for speculation; that no proper basis was given upon which the jury could base reasonably sound calculation. The complaint is based upon a claim for injuries received by plaintiff on October 17, 1925. Defendant contends that the evidence shows that plaintiff was born with an abnormal back consisting of a sacralization or growing together of the fifth lumbar vertebra and the sacrum; that plaintiff received an injury to his back at Huron about one year prior to the accident; that he had some devitalized teeth in his mouth, and that his back showed evidence of arthritis.

It is claimed also by defendant that the said devitalized teeth were the cause of poison being absorbed by plaintiff. Based on that claim defendant asserts that the instructions were not sufficiently specific to prevent the jury from considering an aggravation of his said physical ailments, defects and the previous injury, but did permit the jury to allow damages for an aggravation of plaintiff's condition just prior to the time he received the injuries.

There is a conflict of testimony in the evidence submitted by the parties to this action regarding the alleged former ailments and injury. There is direct, positive testimony that the injury to plaintiff's back received at Huron, Oregon, consisted of the breaking of two ribs high upon the back, a foot above the injury involved in this action and that there was no connection between the two. There is also direct and positive

testimony that the only arthritis suffered by plaintiff is in the fifth lumbar vertebra and is a natural result from the injury received on the 17th day of October, 1925. Plaintiff was examined by defendant's doctor just before he entered the employ of defendant and after the injury he received at Huron about a year prior to the time he received the injury involved in the instant case.

■ There is also some evidence tending to prove that the alleged devitalized teeth had done plaintiff no injury and were of recent origin. There is also evidence that the advice given to plaintiff to have those teeth removed was done by way of precaution and that plaintiff had followed the advice and had received no benefit therefrom. Under this state of the record the question of whether or not plaintiff's accident was an aggravation of former ailments or injuries was one of fact and we cannot determine as a matter of law from the record that any damages were allowed on account of an aggravation of those injuries. The instruction complained of is as follows:

"If you find in favor of the plaintiff you will then take up and consider the question of damages, and upon consideration thereof you should assess and award to plaintiff such sum of money as damages as in your judgment will fully and justly compensate plaintiff for the injuries, if any, he has received. In so doing you have a right, and it is your duty to take into consideration the nature and character of plaintiff's injury, if any, whether it is permanent or temporary, his loss of wages on account of being disabled up to the commencement of this action, if you find he has lost any wages on account of said injury, the pain and suffering plaintiff may have endured on account of said injury, if any, also any physical disability, the impairment of plaintiff's earning capacity which you may find to be the direct and proximate result of his

injury, if any, sustained as the proximate result of defendant's negligence as charged, and for all these matters determine as best you can what sum of money in your judgment will fully and fairly compensate plaintiff for the injury, if any, he has thus received, not exceeding the sum of $4,687.50 as loss of his wages up to the time of the commencement of this action and not exceeding the sum of $50,000 general damages, the amount prayed for in his complaint.

"If you find in plaintiff's favor he is also entitled to recover a reasonable sum for hospital service and physician's services in the treatment of said injuries, if any, not exceeding the sum of $512. The reasonable amount of these items is to be determined by you. And, of course, you must find that they were the result of the negligence of the defendant as charged in the plaintiff's complaint before you will be entitled to award any damages."

This instruction is substantially the same as the instruction given by Judge ROBERT S. BEAN of the Federal District Court of Oregon in *Bowman-Hicks Lumber Co. v. Robinson*, 16 Fed. (2d ed.) 240. By comparing the two instructions it will be found that the learned judge of the circuit court, who presided at the trial of the instant case, used the identical words particularly stressed by defendant as opening the field of speculation to the jury.

The particular language referred to is "determine as best you can." In the very nature of the case there is no way to determine with mathematical accuracy the damages that plaintiff suffered by reason of the accident upon which he relies for damages. The court stressed sufficiently, we think, that he jury was confined to allowing damages which was the proximate result of defendant's negligence as charged. Again the court said at the conclusion of said instruction: "And,

of course, you must find that they were the result of the negligence of the defendant as charged in the plaintiff's complaint before you will be entitled to award any damages.''

The objection to this instruction made by plaintiff was very general. The court of appeals in *Bowman-Hicks Lumber Co. v. Robinson,* above, held that ''The instruction as a whole is thought to be both adequate and fair.'' Writ of certiorari was denied by the United States Supreme Court April 18, 1927, 247 U. S. 736 (47 S. Ct. 574, 71 L. Ed. 1316). Other cases are cited which sustain very similar instructions but we think it is unnecessary to either cite or analyze such cases.

■ Again defendant complains because the court did not specifically instruct the jury as to plaintiff's expectancy of life. *Askay v. Maloney,* 85 Or. 333 (166 P. 29), cited by defendant in support of its contention, is based on an action for damages based on the death of a person. Life's expectancy is the only way to estimate damages in such a case. There is no necessity of introducing any evidence regarding the expectancy of plaintiff's life. The court could have instructed the jury without evidence on that matter: *Askay v. Maloney,* above. In personal injury cases where the injured person survives there are many other elements to be considered: *Morrison v. McAtee,* 23 Or. 530, 536 (32 P. 400). It was held in *Turner v. Missouri K. & T. Ry. Co.,* 45 Tex. Civ. App. 650 (119 S. W. 719), that a similar instruction did not prevent the jury from assessing damages to the present value of the sum found for future loss.

■ Defendant did not except to the instruction on that account. If it believed that the instruction was not sufficient in some particular phase it should have

requested such instruction as it thought proper under the evidence. Not having done so we do not think it is in a position to urge on appeal that the court failed to give an instruction on that particular element.

Defendant also urges that there is no evidence of the amount of wages plaintiff was receiving when he quit work. It appears without dispute that plaintiff continued to work some 38 days after the accident. He was not able to perform the duties of a swing brakeman, which required climbing upon and descending from the roof of the cars, and therefore exchanged work with the rear brakeman, or flagman.

There is no evidence of the wage received by plaintiff as a flagman. We think the jury was justified in inferring from the evidence that he was receiving the same wage he received as a swing brakeman. There were three brakemen on the train, a front brakeman, a swing brakeman and a rear brakeman, the latter of whom were designated as the flagmen. There was no evidence adduced that there was any difference in the wage received by the different brakemen.

At the same time we think that the wages plaintiff was receiving, $250 per month, when he was injured is the proper basis upon which to measure the amount of damages he was entitled to recover as a loss of wages from the time he quit work until he commenced the present action. That amount is $4,687.50.

Defendant urges with much earnestness that the amount of the judgment, $28,456 is as a matter of law excessive and convincing evidence that the jury was controlled by passion and prejudice. The amount of the loss of wages as shown was $4,687.50. The jury was also instructed that if they found the plaintiff entitled to recover he would be entitled to such hospital

service and physical treatment expended by plaintiff as a result of said injury a reasonable sum not exceeding $512. These two sums amounting to $5,199.50 were supported by evidence. The amounts could be calculated accurately. The amount then allowed for pain and suffering and the loss of further earnings was $23,256.50.

Plaintiff at the time of the accident was 38 years of age and had a life expectancy, according to mortuary tables, of 29.62 years. He was earning at the time of his injury and for some time before an average of $250 per month. The evidence tends to show that he is unable to do manual labor. There is no evidence that he is capable of earning money otherwise.

The measures of damages in personal injury cases in the federal courts is the same as in our state courts. Loss of future wages is not the total of wages plaintiff would receive during his life expectancy. There are many contingencies to consider, such as sickness, unemployment and many others: *Morrison v. McAtee,* above. Plaintiff has not only lost his earning power, but also his probability of promotion. So there are many elements entering into the problems of determining the true measure of plaintiff's damage as a result of his unfortunate injury.

Plaintiff would have earned during his life's expectancy the sum of $88,860, calculated on the basis of $250 per month, the wage he was earning when injured. The present worth of that sum is $44,538, almost twice the sum allowed by the jury for both pain and suffering, and loss of earning power. We cannot say that the verdict is excessive or is the result of passion and prejudice.

As a result of said injury plaintiff is afflicted with spondylolisthesis which being interpreted is tilting of

the fifth lumbar vertebra. His spine is thereby thrown out of alignment. There is about one-third destruction of the intervertebral disc between the fourth and the fifth lumbar vertebra. Other injuries to the spine resulted from the injury. The list of the spine causes pressure on the spinal cord. Said list occurs when plaintiff stands any extended length of time, receives a jar or jolt. The evidence tends to show his affliction is permanent.

He is suffering from neurasthenia as a result of said injury. We cannot say as a matter of law in the light of these figures that the damages are excessive. They are larger than the damages allowed by the jury in the first trial. That is not evidence that the jury in the second trial were moved by passion, prejudice or sympathy in behalf of plaintiff. As mentioned above plaintiff adduced other testimony of his injury and the condition of his health at the time of the second trial could easily have influenced the jury to believe to a greater degree of certainty that he was incurably injured. His injury was a severe one, at times causing temporary paralysis and causing him pain and suffering. While the amount of the verdict is large, we cannot say as a matter of law that it is too large or unjust.

The judgment is affirmed.

RAND and ROSSMAN, JJ., concur.

KELLY, J., did not participate in this opinion.